STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Quality Market – Parnigoni Lot Parking | } | Docket No. 53-3-08 Vtec |
| (Appeal of Blackburn) | } | |
|  | } | |

Decision and Order on Second Cross-Motions for Summary Judgment

Michael and Brandi Blackburn appealed from a decision of the Development Review Board (DRB) of the City of Barre, granting Appellee-Applicant Quality Market's application to remove an existing building on an adjacent lot and expand an existing parking lot on that adjacent lot. Appellants are represented by David L. Grayck, Esq. and Zachary K. Griefen, Esq.; Appellee-Applicant Quality Market (Applicant) is represented by L. Brooke Dingledine, Esq.; and the City is represented by Oliver L. Twombly, Esq. Appellants and Applicant have each moved for summary judgment. The following facts are undisputed unless otherwise noted.

At the request of Applicant, a site visit was taken to provide context for the summary judgment motion on July 29, 2009.[1] After the site visit, by agreement of the parties, Applicant provided a survey of the property to the Court in connection with the motion for summary judgment.

A decision on summary judgment, issued October 30, 2008 (October 2008 Decision), resolved Questions 2, 3, 4, 5, 6, 9, 10, 11, and 12, and the first clause of Question 7 of the Statement of Questions.

---

[1] The site visit was originally scheduled so that all participants could attend; by agreement of Appellants' attorneys, it was held with Attorney Dingledine, her clients, and Appellant Michael Blackburn, without Appellants' attorneys.

Quality Market is an existing grocery store that falls within the definition of "Food Store, Small" in § 2.2.01 of the City of Barre Zoning Regulations (Regulations). It is located at the corner of Washington Street (Route 302) and Freedom Way, at the address of 155 (155–159) Washington Street in a Planned Residential zoning district. Based on the survey filed in August 2009, the Quality Market lot is approximately 9,759 square feet, or approximately 0.22 acre. The survey does not provide the setbacks of the existing Quality Market building, other than by calculation from measurement based on the graphic scale; for purposes of the present motions it is sufficient to note that the existing building is nonconforming as to setbacks. See Regulations Article 7; October 2008 Decision, slip op. at 1 n. 3. No alterations to the Quality Market building are proposed. The property's access to the street network and the configuration of its on-site parking spaces have not been provided to the Court in connection with the present motions, other than as they are shown visually on an aerial photograph of unknown date, which was attached to Appellants' reply memorandum in the earlier summary judgment motions.

Adjacent to and westerly of Quality Market, also in the Planned Residential zoning district, is a lot formerly owned by Dr. Richard F. and Joan S. Parnigoni (the Parnigoni lot), containing an existing building with an address of 153 (151-153) Washington Street. The building houses an optometric office on the ground floor and a residential apartment upstairs. From the survey, it appears that an attached shed or garage is also located behind the building, slightly farther than 20 feet from the rear boundary of the Parnigoni lot. The Parnigoni lot is approximately 9,591 square feet in area, or approximately 0.22 acre, and is configured with room for seven existing paved parking spaces outside of the garage, four of which are marked by striping, on the westerly side of the lot adjacent to the existing residential property of another neighbor (LaCroix) not involved in this appeal.

2

Appellants' residential property has the address of 52 Webster Street and is located adjacent to (southerly of) the rear lot line of the Parnigoni lot and to a small segment of the southwesterly corner of the rear of the existing Quality Market lot and building. Access to Appellants' property is from Webster Street.

Dr. Parnigoni acquired the Parnigoni lot in 1977, and shortly thereafter converted a then-existing first-floor apartment into a professional optometric office, from which he operated his practice continuously through at least the date of his affidavit of June 13, 2008. As the Court determined in the October 2008 Decision, the optometric office is a pre-existing, nonconforming use. The second floor of the building contains a residential apartment, an allowed use in the zoning district.

The present application was filed in January 2008 by Dr. Parnigoni as property owner, and by Quality Market as applicant company. In May 2008, ownership of the Parnigoni lot was transferred to P & G Real Estate, LLC, the same entity that owns the Quality Market lot.

The application presently before the Court proposes to remove the existing structures on the Parnigoni lot and to expand the existing parking lot on that lot to a total of sixteen spaces,[2] with associated proposed landscaping. It was considered by the DRB as a change in use from its existing nonconforming use as a medical/dental/optical office (and allowed residential apartment) to an allowed conditional use as a "private parking lot." As a nonresidential conditional use, it requires site plan approval, § 4.4, as well as conditional use approval, § 4.3.

The narrative describing the proposal, submitted by Quality Market as part of the application, states that Quality Market proposes to demolish the existing building and expand the existing parking lot on the property. The proposed parking lot is proposed to be set back 15 feet from the Parnigoni lot's boundary with the Blackburns'

---

[2] The DRB approved fewer than the 18 spaces in the original application; Applicant is now seeking approval of 16 spaces, as shown on the revised site plan.

lot. As depicted on the revised site plan, five existing mature ash trees on the Parnigoni property near the rear boundary are proposed to be removed. Four new maple trees are proposed to be planted on the neighboring Blackburn property near the Blackburn-Parnigoni lot line. Two eight-foot-tall cedar hedges are also proposed to be planted: one on the southerly edge of the parking lot facing the Blackburn lot line, and another along a portion of the Parnigoni lot's westerly boundary. Two planting beds, proposed to each contain three Japanese Barberry and three American Arborvitae, are proposed along the Parnigoni lot's northerly boundary on either side of the proposed 24-foot curb cut, which provides entrance and egress to Washington Street. Fencing is proposed to enclose the rear setback area; it is intended to exclude access to that rear setback area, except for a gate from the easterly side to allow snow storage within the rear setback area.

As discussed in the October 2008 Decision, the Quality Market use as a "Food Store, Small" is a nonconforming use in the zoning district. The proposed parking lot would be reserved for customers of Quality Market; Appellants argue that the proposed parking lot is therefore an impermissible extension or expansion of the nonconforming small food store use on the adjacent lot.

Section 2.2.01 of the Zoning Regulations defines the use category of "Parking Lot, Private" (private parking lot) as "[a] use of land for the provision of parking spaces in the open air, not open to the general public." The definition does not limit the use category to those parking lots in which the spaces are individually or privately rented. Therefore, regardless of whether the parking spaces would be reserved for customers of Quality Market or would be otherwise privately allocated, the proposal qualifies for consideration as a private parking lot use, as long as the Parnigoni lot is considered a separate lot. If, on the other hand, the Parnigoni lot has merged with the Quality Market lot, the Court must analyze whether the proposed parking lot use would become an accessory use to the primary use on the merged lot as a small food store,

4

and, if so, whether it would be an impermissible expansion of the preexisting nonconforming small food store use.[3]

Because the lots have come into common ownership, and because both lots are nonconforming as to size, the Court must first examine whether the Regulations require merger of the two lots, and then whether the state statute as to merger requires any different result. Merger is addressed by § 4.8.02 of the Regulations, as well as in the state statute, 24 V.S.A. § 4412(2)(B).

Section 4.8.01 of the Regulations allows separate preexisting undersized lots to be developed for purposes permitted in the zoning district if the parcel is at least 5,000[4] square feet in area. However, § 4.8.02 states:

> If such nonconforming [preexisting undersized] lot subsequently comes under common ownership with one or more contiguous lots, the lot shall be deemed merged for the purpose of development with the contiguous lots to the extent necessary to meet the district lot size regulations.

Section 4.8.02 goes on to provide that:

> Individual contiguous lots under common ownership may be transferred to other ownership without subdivision if:
> 1. The remaining lots meet all applicable district regulations
> 2. The lots remain in their originally approved configuration
> 3. The transferred lot(s) are either of adequate configuration to meet applicable district regulations or will be used in conjunction with other contiguous lots in order to meet applicable district regulations[.]

The plain language of the first sentence of § 4.8.02 requires the Quality Market lot and the Parnigoni lot to be deemed merged, for the purpose of development, into a single lot of approximately 0.45 acre. See In re Curtis, 2006 VT 9, ¶ 2, 179 Vt. 620 (mem.)

---

[3]  The Regulations define accessory use as a use "customarily incidental, subordinate and clearly related to the primary use and located on the same lot." See § 2.2.01 (emphasis added).

[4]  Note 1 to Article 7 of the Regulations refers to the requirement as 5,445 square feet (one-eighth-acre) in area, which is found in the provision of the state statute protecting existing small lots. See 24 V.S.A. § 4412(2)(A)(i).

(explaining that courts construe the language of a zoning ordinance according to its "'plain and ordinary meaning'" (quoting In re Nott, 174 Vt. 552, 553 (2002) (mem.))). The contiguous, nonconforming, undersized lots have come under common ownership. Even though the resulting merged lot would still not meet the minimum lot size requirement for the presently-existing nonresidential use, which requires a minimum lot size of two acres, see Regulations Article 7, merger would result in a lot that is closer to meeting the applicable district regulations as to minimum required lot size than were the separate lots.[5]

The second sentence of § 4.8.02 also does not prevent merger of the Quality Market lot and the Parnigoni lot. The plain language of the second sentence of § 4.8.02 indicates that it applies when "contiguous lots under common ownership" are transferred. As there is no proposal now to transfer either the Parnigoni lot or the Quality Market lot, the remainder of § 4.8.02 is inapplicable.

Although § 4.8.02 of the Regulations requires the merger of the two lots, the authority for the City to enact that section is limited by the state statute regarding

---

[5] Applicant argues that the lots are not deemed to be merged, based on the language in the first sentence of § 4.8.02 stating that lots merge "to the extent necessary to meet the district lot size regulations," because the resulting lot would still be undersized and would not succeed in reaching a size that would meet the district requirements. This interpretation would create the absurd result of requiring merger of, e.g., two one-acre lots, because the resulting lot would meet the two-acre minimum, while not requiring merger of the two seriously undersized quarter-acre lots in the present case. The City has provided a one-sentence statement that "the City has historically construed § 4.8.02 . . . consistent with the analysis set forth" by Applicant. Without evidence as to how long the provision has been in the Regulations and how many instances of this interpretation have occurred, the Court cannot determine whether the requirement to avoid an absurd result in the interpretation of an ordinance should govern, see In re Ambassador Ins. Co., 2008 VT 105, ¶ 18, or whether the Court should be guided by a consistent application by the City of its ordinance, see In re Champlain Coll. Maple St. Dormitory, 2009 VT 55, ¶ 15. However, because of the effect of the state statute as to merger, discussed below, it is not necessary for the Court to take evidence on this issue.

merger, 24 V.S.A. § 4412(2)(B). Section 4412(2)(B) authorizes municipalities to enact bylaws regarding merger of undersized lots, if an existing small lot subsequently comes under common ownership with one or more contiguous lots, but prevents merger in the following circumstances:

> However, a nonconforming lot <u>shall not be deemed merged</u> and may be separately conveyed if all the following apply:
> (i) The lots are conveyed in their preexisting, nonconforming configuration.
> (ii) On the effective date of any bylaw, each lot was developed with a water supply and wastewater disposal system.
> (iii) At the time of transfer, each water supply and wastewater system is functioning in an acceptable manner.
> (iv) The deeds of conveyance create appropriate easements on both lots for replacement of one or more wastewater systems, potable water systems, or both, in case there is a failed system or failed supply as defined in 10 V.S.A. chapter 64.

(emphasis added). Thus, even if the lots would otherwise merge under the municipal bylaw, they will not merge if all four subsections of 24 V.S.A. § 4412(2)(B) are met.

In the present case, all four subsections of 24 V.S.A. § 4412(2)(B) are met. The Parnigoni lot has been conveyed to the owners of the Quality Market lot in its preexisting, nonconforming configuration, in accordance with subsection (i). Both lots are developed with municipal water and sewer service, in accordance with subsection (ii).[6] The parties do not claim that these services are not functioning in an acceptable manner; subsection (iii) is therefore met. Subsection (iv) is not applicable, as neither lot has an onsite water supply or wastewater system.

Accordingly, under 24 V.S.A. § 4412(2)(B), the Parnigoni lot and the Quality Market lot have not merged, and they remain separate lots even though they are now

---

[6] None of the parties asserts that these services did not exist at the time the bylaw regarding merger was enacted, although the motions do not provide either the date on which the bylaw regarding merger was enacted, nor the dates on which municipal water and sewer services were made available to the lots.

7

owned by the same entity. The state statute prevents the merger that otherwise would occur under § 4.8.02 of the Regulations.

As the lots have not merged and thus remain separate, the proposed private parking lot is proposed to be the primary use of the Parnigoni lot; it is not accessory to the nonconforming use on the Quality Market lot as it is on a separate lot.[7] As a separate and distinct primary use on a separate and distinct lot, the proposed private parking lot would not be an expansion or enlargement of the preexisting, nonconforming Quality Market use.[8]

In order for the proposed parking lot to receive a zoning permit, it must meet the conditional use standards in § 4.3, and must also receive site plan approval under § 4.4.[9]

Because it is a nonresidential use, the proposed private parking lot may require waivers, either under § 4.9 regarding some of the dimensional requirements otherwise required by Article 7, or under § 8.5 regarding some of the requirements of §§ 8.3 and 8.4.03. In the October 2008 Decision, the Court noted that no such waivers appeared to have been requested in the application or noticed before the DRB, and warned the parties that, if they had not been requested below, they would not be before the Court in the present appeal. In re Torres, 154 Vt. 233, 236 (1990) (explaining why court lacks authority to convert hearing on permitted use application to hearing on conditional use); In re Bouldin Camp – Noble Road, No. 278-11-06 Vtec, slip op. at 6 (Vt. Envtl. Ct. Apr. 23, 2007) (ruling that only the appealed-from application is before the Court) (citing In re Torres). Applicant has noted that the Regulations do not contain any

---

[7] Because the lots have not merged, as explained in the October 2008 Decision Applicant's proposal qualifies for consideration as a "Parking Lot, Private," which is a conditional use in the zoning district, resolving Questions 13 and 15 of the Statement of Questions. See Regulations Article 6.

[8] Resolving Questions 1, 8, and the remaining clause of Question 7 of the Statement of Questions.

[9] The remaining questions in Appellants' Statement of Questions only raise issues as to the project's compliance with the conditional use standards.

separate application requirement for waivers, so that the requested application should be considered to have included the request for any necessary waivers.

At the telephone conference scheduled in this matter (see enclosed notice), the parties should therefore be prepared to discuss the issue of whether and which specific waivers are requested as part of the present application, as well as to discuss the scheduling of mediation and trial on the remaining questions in the Statement of Questions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Applicant's Motion for Summary Judgment is GRANTED as to Questions 1, 8, 13, 15, and the second clause of Question 7, and DENIED as to Questions 14, 16, and 19, and that Appellants' Motion for Summary Judgment is DENIED as to Questions 1, 8, 13, 15, and the second clause of Question 7.[10]

Done at Berlin, Vermont, this 31st day of August, 2009.

_____
Merideth Wright
Environmental Judge

---

[10] The October 2008 Decision resolved Questions 2, 3, 4, 5, 6, 9, 10, 11, and 12, and the first clause of Question 7 of the Statement of Questions; therefore, at this time, only Questions 14, 16, 17, 18, and 19 remain at issue in this appeal.